# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BENANTI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MATEVOUSIAN,<br><br>　　　　　Defendants. | Case No. 1:17-cv-01556-LJO-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO CORRECT SPELLING OF DEFENDANTS ALATARY AND CASTANADA'S NAMES<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 68] |

Plaintiff Michael Benanti is appearing pro se and in forma pauperis in this civil rights action pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Currently before the Court is Defendants' motion for summary judgment, filed August 26, 2019.

///
///
///
///
///
///

1

# I.

# RELEVANT BACKGROUND

This action is proceeding against Defendants D. Alatary, C. Castenada and Dr. Thomas Moore for deliberate indifference to a serious medical need in violation of the Eighth Amendment.[1]

On June 5, 2018, Defendants filed a motion for summary judgment for failure to exhaust the administrative remedies.

On August 23, 2018, the undersigned issued Findings and Recommendations to deny Defendants' motion for summary judgment, which was adopted in full on September 28, 2018.

On October 11, 2018, Defendants filed an answer to the complaint.

On October 16, 2018, the Court issued the discovery and scheduling order.

As previously stated, on August 26, 2019, Defendants filed a motion for summary judgment addressing the merits of Plaintiff's claims.

Plaintiff filed an opposition on December 2, 2019, and Defendants filed a reply on December 9, 2019.

# II.

# LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

---

[1] Plaintiff listed Defendants as D. Alitary and C. Castendada and the Court's docket reflects that spelling. However, papers filed by Defendants indicate that the correct spellings are David Alatary and Jose Castaneda Correa. The docket will be updated to reflect D. Alatary and Castaneda for consistency.

The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

Local Rule 260(b) requires that "any party opposing a motion for summary judgment … reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied on in support of that denial."

Normally, documents not signed under penalty of perjury cannot be considered on summary judgment. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (examining verified pleadings and motions in opposition to summary judgment). However, "the Ninth Circuit appears to require district courts to consider some unsworn, inadmissible material in the summary judgment analysis." Rosenfeld v. Mastin, Case No. CV 11-7002-DOC(E), 2013 WL 5705638, at *4 (C.D. Cal. Sept. 11, 2013) (citing Fraser v. Goodale, 342 F.3d 1032 (9th Cir. 2003)). As stated in Rosenfeld,

> Under Fraser v. Goodale and its progeny, this Court should consider the unsworn statements made by Plaintiff in the Third Amended Complaint and in the Opposition concerning the force allegedly used on him at the time of his arrest. Plaintiff plainly has personal knowledge of the content of these statements and could present the statements in admissible form through his own testimony at trial. To refuse consideration of these statements would elevate form over substance, in disregard of the legally indistinguishable holding of Fraser v. Goodale.

Rosenfeld v. Mastin, 2013 WL 5705638, at *5.

Here, the Court notes that neither the first amended complaint or opposition were signed under penalty of perjury. (ECF Nos. 14, 81.) Plaintiff did attach a proof of service to the first amended complaint which is signed under penalty of perjury. Given Plaintiff's pro se status and the fact that the

3

proof of service is attached and signed under penalty of perjury the Court will consider it verified for purposes of ruling on this motion. In addition, with regard to Plaintiff's opposition, he presented his own statement of disputed facts (ECF No. 81) to identify facts in dispute, but he does not say why he disputes them or cite to portions of the record that support a different interpretation of the facts. To the extent Plaintiff has personal knowledge of the information set forth in his opposition, wherever a fact is brought into dispute by facts presented in these filings, the facts will be considered here insofar as they otherwise are competent and material.

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint

Plaintiff suffers from acid reflux stemming from the treatment of Thrombocytopenia, and both conditions are documented in Plaintiff's presentence report. Plaintiff has been treated with prescription Omeprazole for over seven years and at several institutions within the United States Bureau of Prisons.

In August 2017, upon Plaintiff's arrival at the United States Petitionary in Atwater, Dr. Thomas Moore advised Plaintiff that he would not be provided Omeprazole for acid reflux, but he could purchase Prilosec at the commissary as an over the counter medication.

On October 6, 2017, the entire prison was locked down due to a riot and normal operations did not resume until January 2, 2018. Plaintiff immediately began to complain about acid reflux and his inability to purchase Prilosec from the commissary due to the lockdown. During the early stages of the lockdown, Plaintiff spoke to D. Alatary from health services and he requested a prescription for Omeprazole and to see a doctor. Plaintiff explained that he had not been able to purchase any over the counter medication from commissary and he was having increasing pain and discomfort on a daily basis. Defendant Alatary told Plaintiff that he would not authorize a prescription for over the counter medications because it was not his problem and he should contact the trust fund who manages the commissary to buy it.

In the middle of October 2017, Plaintiff spoke to the Unit Two Care Manager, Castaneda and explained his medical condition and lack of medication. Plaintiff complained of severe and constant

4

burning in his stomach and throat with bile erupting into his mouth periodically. Plaintiff also indicated that he was experiencing increasing symptoms of tightening and closure of his throat and the development of a violent cough. The pain caused headaches, lack of rest and constant discomfort. Mr. Castaneda returned to Plaintiff's cell a day or so later and indicated he had spoken with the trust fund administrator and Warden who stated, Plaintiff would not be allowed to make a special purchase of Prilosec, there was no schedule for the inmate population to go to commissary, and even if permitted to go the commissary the list would not include Prilosec or any acid pump inhibitor. Plaintiff contends Mr. Castaneda's inaction allowed the improper denial of medical treatment.

A day or so later, Plaintiff report chest pains to officer Prewitt. Both Mr. Alatary and Mr. Castaneda responded to Plaintiff's cell and denied medical treatment. Plaintiff indicates that after he filed the instant action in October 2017, he was provided a prescription for Omeprazole in November 2017.

**B.    Statement of Undisputed Facts**

1. Plaintiff Michael Benanti is a federal prisoner at the United States Penitentiary in Atwater, California ("USP Atwater") from August 22, 2017, to present. (ECF No. 1 at 3.)

2. When Plaintiff arrived at USP Atwater, his transfer form identified only one prescription medication for sertraline (an antidepressant known as Zoloft) and no over-the-counter ("OTC") medications. (Declaration of Jennifer Vickers ("Vickers Decl.") Ex. A, ECF No. 23-3.)

3. On August 24, 2017, Plaintiff consulted Dr. Moore, who discussed Plaintiff's acid reflux and advised him to purchase OTC Prilosec from the commissary and follow up if there is a problem. (Pl. Dep. at 39:17-40:18; see also Declaration of Dr. Moore ("Moore Decl.") ¶ 13, ECF No. 68-3.)

4. Plaintiff was not indigent and was able to purchase OTC Prilosec from the commissary. (Pl. Dep. at 43:7-12; see also Declaration of Castaneda ("Castaneda Decl.") ¶ 13, ECF No. 23-2.)

5. On October 6, 2017, USP Atwater was placed in an emergency lockdown because six inmates assaulted a BOP staff member. (Pl. Dep. at 70:6-71:25; see also Castaneda Decl. ¶ 13.)

6. During the lockdown, BOP medical providers traveled through Plaintiff's unit on a daily basis to provide medical access. (Pl. Dep. at 70:6-71:25; Moore Decl. ¶ 24.)

5

7. Defendant Alatary is not a medical provider; he is an administrator of the health services department. (Pl. Dep. at 79:19-24; 82:10-23.)

8. Castaneda is not a medical provider; he is a member of the unit team. (Pl. Dep. At 76:14-20.)

9. Plaintiff described Castaneda's response as, "really good," stating "Castaneda was really good. Let me be honest about it. Castaneda was really good about it. He did what he could. He went to the command center. He talked to them. He asked them if they were going to sell Prilosec. He came back to me…he was responsive. He did his part of is." (Pl. Dep. at 75:23-76:4.)

10. Castaneda was sympathetic. (Pl. Dep. at 76:14-77:2; 113:18-114:6.)

11. Castaneda investigated what was available from the commissary during the lockdown and reported back that the commissary was not going to sell OTC Prilosec even as a special purchase. (Pl. Dep. at 77:2-9.)

12. Castaneda alerted medical. (Pl. Dep. at 113:25.)

13. Plaintiff has no medical expert to support any of his claims. (Pl. Dep. at 110:5-12.)

**C. Analysis of Defendants' Motion**

Defendants argue that: (1) the Court should not imply a Bivens remedy in this novel context; (2) plaintiff's claims are barred by qualified immunity; and (3) plaintiff cannot prove that any Defendant violated any constitutional right.

In opposition, Plaintiff argues that he did not have access to the commissary during lockdown and consequently he was unable to purchase OTC Prilosec for about three weeks. Plaintiff further contends that Dr. Moore knew there was no OTC medications available from October 6, 2017 to November 1, 2017, due to the lockdown status and suspended commissary.

1. <u>Extension of Bivens Remedy</u>

Defendants argue that Plaintiff's deliberate indifference claim under the Eighth Amendment presents a new context under the framework set forth in <u>Ziglar v. Abbasi</u>, __ U.S. __, 137 S.Ct. 1843 (2017), and special factors counsel hesitation on extending <u>Bivens</u> to his claims.

Even assuming, without deciding, that there is an implied Bivens remedy in this context, for the reasons explained below, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical needs.

2. Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); accord Wilhelm v. Rotman, 680 F.3d at 1122; Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).

A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was

7

medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

### a. Defendant Dr. Moore

Every inmate who arrives at USP-Atwater are provided with an initial medical screening and information regarding BOP programs, and the rules and regulations including how to obtain medical treatment. (Dr. Moore Decl. ¶ 7.) It is undisputed that upon Plaintiff's arrival at USP-Atwater on August 22, 2017, a health screen was performed by nurse Spears, including a "Medication Reconciliation" during which Plaintiff's known medication list, including OTC items, was compiled and compared to new and changed BOP orders. (Dr. Moore Decl. ¶¶ 12-13, Ex. 1 at US 0000011-12.) When Plaintiff arrived at USP Atwater, his transfer form identified only one prescription medication, for sertraline (an antidepressant known as Zoloft), and no OTC medications. (Vickers Decl., Ex. A; Dr. Moore Decl. ¶¶ 12-13, Ex. 1 at US 000009-13.) Plaintiff's prescription for Sertraline was continued. (Dr. Moore Decl. ¶¶ 12-13, Ex. 1 at US 0000011-12.)

On August 24, 2017, Plaintiff had a consultation with Dr. Moore for his intake evaluation. (Dr. Moore Decl. ¶ 13, Ex. 1 at US 0000019-30.) As Plaintiff was a new inmate, Dr. Moore did not have access Plaintiff's medical records from non-BOP providers. Id. Dr. Moore did have access to the transfer form which identified only a prescription for sertraline. Id.; see also Vickers Decl., Ex. A. Dr. Moore performed a History & Physical identifying six medical conditions including: vertigo, sleep apnea, a cough associated with acid reflux and allergies, low back issues, and the use of Zoloft. (Dr. Moore Decl. ¶ 13, Ex. 1 at US 0000021.) Dr. Moore continued the prescription for sertraline (through the Chronic Care program), wrote a "lower bunk pass" to deal with the back problem, and instructed Plaintiff how to obtain further medical care for sleep apnea. Id. at US 000005, 40. Dr. Moore discussed Plaintiff's acid reflux and advised him to purchase OTC Prilosec from the commissary and to follow up with medical if problems. (Pl. Dep. 39:17-40:18.) Plaintiff's medical condition was never an emergency and any treatment could wait until the following day. (Dr. Moore Decl. ¶¶ 21, 36.)

8

1    Contrary to Plaintiff's contention, Plaintiff admits that the first time he actually talked to Dr.
2    Moore after the lockdown was October 27, 2017, and at that time Dr. Moore wrote him a prescription.
3    (Pl. Dep. 90:5-17.) There is no claim or evidence that Dr. Moore had any influence over the
4    commissary and he had none. (Dr. Moore Decl. ¶ 17.) Indeed, the undisputed evidence shows that
5    Dr. Moore was not aware of the unavailability of OTC Prilosec during the lockdown. (Dr. Moore
6    Decl. at 8:1-11.) Further, when Dr. Moore learned of Plaintiff's complaints, he wrote a prescription
7    and placed him in the Chronic Care program. Thus, there is no evidence to demonstrate that Dr.
8    Moore was deliberately indifference. Rather, it appears that Plaintiff contends Dr. Moore is liable as a
9    supervisor, which does not give rise to a constitutional violation. See Ashcroft v. Iqbal, 556 U.S. 662,
10   676 (2009) (vicarious liability is inapplicable to Bivens).

11   Even assuming medical staff made a mistake in failing to recognize a prescription for
12   omeprazole, the mistake does not demonstrate deliberate indifference on the part of Dr. Moore or any
13   other medical professional. The mere fact that Plaintiff may have previously been prescribed
14   omeprazole at prior institutions, but upon transfer to USP Atwater was required to purchase the
15   identical medication OTC, does not demonstrate deliberate indifference. Indeed, Plaintiff
16   acknowledges that he purchased OTC Prilosec on several occasions and then after lockdown status
17   and discovery that it would not be provided, Dr. Moore took prompt action and wrote a prescription
18   and placed him in Chronic Care because he was uncertain how long the commissary would be
19   unavailable due to the lockdown. The mere delay (not attributable to Dr. Moore) and/or negligence
20   does not give rise to a claim for relief. Thus, even viewing the evidence in the light most favorable to
21   Plaintiff and drawing all reasonable inferences in his favor, no reasonable juror could find that
22   Defendant Dr. Moore acted with deliberate indifference to his serious medical needs.
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

### b. Defendant Alatary

It is undisputed that Defendant Alatary is not a medical provider, and he cannot prescribe any medication. When Plaintiff talked to Alatary on October 16, 2017, it was during an escort to the lockdown interview,[2] and Plaintiff acknowledges that he did not complain about acid reflux pain at that time, only that "they're not selling [Prilosec] in the commissary." (Pl. Dep. 81:5-98.) On October 16, 2017, Alatary simply happened to be in Plaintiff's unit to help with escorts to the lockdown interviews. In response to Plaintiff's statement about the lack of Prilosec, Alatary told Plaintiff to talk to the people in trust fund who run the commissary. As a non-medical provider, not in charge of commissary, and not a member of Plaintiff's unit team, Alatary's statement to Plaintiff was appropriate. In addition, three days later, on October 19, 2017, Alatary responded to Plaintiff's BP-8 informal grievance in writing and advised him to seek medical treatment for his condition. (Pl. Dep. 83:19-86:17, Ex. 15.) Plaintiff was specifically advised that a prescription was required before an inmate could be placed on Chronic Care, and if he felt medical care was necessary, sick call was available on Monday, Tuesday, Thursday, and Friday during the breakfast move. (Pl. Dep. 83:19-86:17.) This also was appropriate advice by Alatary. Because Plaintiff had access to medical providers and he did not have a prescription medication or Chronic Care assignment, Alatary as a non-medical provider cannot second guess the opinions of medical professionals. This being the case, there is no evidentiary basis for finding deliberate indifference by Defendant Alatary.

With regard to Plaintiff's claim that Alatary, along with Castaneda, responded to his complaints about acid reflux on October 26, 2017, only Castaneda was a member of Plaintiff's unit team who investigated the claim and advised the medical team. It is undisputed that Alatary was not a member of Plaintiff's unit team and there is no evidence that he did anything to interfere with any medical recommendation or treatment. Indeed, Plaintiff acknowledged that Castaneda was sympathetic and did what he could. (Pl. Dep. 75:23-76:5.) As a non-member of the unit team, it was

---

[2] Alatary had been reassigned from his regular duties as a Health Services Administrator to escort inmates to an interview room. (Pl. Dep. at 79:19-24; 82:10-23.) The "lockdown interview" was part of the security investigation by BOP security officials to determine facts relevant to the lockdown. Id. at 82:4-83:18.

10

reasonable for Alatary to rely on Castaneda's recommendation. Accordingly, Plaintiff has failed to establish a violation of the Eighth Amendment against Defendant Alatary.

### c. Defendant Castaneda

It is undisputed that Defendant Castaneda is a case manager in Plaintiff's housing unit, and he is not a medical provider and cannot prescribe any medication. As a case manager in Plaintiff's housing unit, he is part of Plaintiff's unit team. On October 11, 2017, Plaintiff submitted a special BP-9 request for administrative remedy directly to the Western Regional Office in Stockton, California, alleging a "sensitive" need for "emergency medical treatment."[3] (Castaneda Decl, Ex. 3, ECF No. 23-2.) In pertinent part, Plaintiff complained of acid reflux and the need for "something more than Prilosec an (OTC)." Id. Although Plaintiff stated "no commissary" he did not allege that he did not have OTC Prilosec or that it was unavailable. Id. Plaintiff's administrative request was denied by the Western Regional Office as not "sensitive." Id. Plaintiff was advised to file his request at the appropriate level via the regular procedures. (Castaneda Decl. ¶ 10, Ex. 3.) However, Plaintiff failed to follow the directions provided. (Castaneda Decl. ¶ 11.)

On October 26, 2017, Plaintiff complained to his unit team that he was having chest pains from acid efflux.[4] (Pl. Dep. 73:6-74:8.) As a member of Plaintiff's unit team, Castaneda responded to Plaintiff's complaints. Castaneda altered the medical department as he is not a medical provider. (Pl. Dep. 113:18-21.) At his deposition, Plaintiff indicated Castaneda's response was "really good," stating:

> Castenada [sic] was really good. Let me be honest about it. Castenada [sic] was really good about it. He did what he could. He went to the command center. He talked to them. He asked

---

[3] Inmates are generally required to complete an initial informal grievance to BOP officials at USP Atwater (using the BP-8 form) before proceeding to the formal BP-9 review at the Regional Office. 28 C.F.R. § 542.14. An exception is made for "sensitive" matters if an inmate's safety or well-being would be placed in danger. Id. at § 542.14(d). (Castaneda Decl., Ex. 3.) However, contrary to Plaintiff's belief, nothing in his BP-9 did suggest that his well-being was in danger. Id.

[4] Plaintiff's claim that there is no evidence this incident took place on October 26, 2017, is contrary to the evidence presented. Plaintiff indicated that his "emergency" occurred the day before he wrote the complaint to the District Court. (Pl. Dep. 75:7-16.) Moreover, the undisputed evidence demonstrates that Castaneda handled the response for the unit team. (Pl. Dep. 74:10-76:20; Castaneda Decl. ¶ 4.) Castaneda investigated and alerted medical. (Pl. Dep. 113:18-21.) Furthermore, on October 27, 2017, Dr. Moore saw Plaintiff and wrote a prescription. (Dr. Moore Decl. 7:9-17, Ex. 1.) There is no other evidence of the call to contradict that it took place on October 26, 2017.

11

them if they were going to sell Prilosec. He came back to me . . . he was responsive. He did his part of it.

(Pl. Dep. 75:23-76:5.) Plaintiff saw Dr. Moore the following day who wrote a prescription. (Pl. Dep. 90:1-17, Ex. 16.)

In his opposition, Plaintiff contends that there was a "second" contact with Defendant Castaneda and cites to Defendant's answer. The answer, in relevant part, states:

> Defendant admits that, at some point during the lockdown, Plaintiff complained to him about the inability to go to Commissary because he needed to buy OTC "heartburn" medicine. Defendant further admits that he did tell Plaintiff that he would see what he could find out for him in terms of when inmates might be permitted to purchase items from the Commissary. Defendant admits that he spoke to a member of the Command Center Team that handled logistics during the lockdown to find out what the schedule for Commissary was and that he learned that the Commissary list was going to be very limited.

(Ans. at 2:14-24; ECF No. 39.)

In addition, the answer states:

> Defendant is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation that he complained of chest pains to Unit Officer Prewitt on an unspecified date and, on that basis, denies the same. Defendant denies that there was an occasion when he and Health Services Administrator David Alatary responded with Unit Officer Prewitt to Plaintiff's cell. Defendant avers that there was an occasion when he was making rounds in the Housing Unit when Plaintiff complained to him about "heartburn" and that, because the Plaintiff did not appear to be in distress; was standing upright while talking to him; and was not showing any outward signs of chest pains, it did not appear to him to be a medical emergency and, for that reason, he advised Plaintiff that he would let medical know. Defendant further avers that he notified the appropriate medical personnel so that they would be aware and alert for any issues. Finally, Defendant avers that he returned to Plaintiff's cell and advised him that he had relayed his concerns to Health Services.

Id. at 5:1-28. Furthermore, at his deposition, Plaintiff identified only one conversation with Castaneda and denied there were any others:

> Q. Have we discussed all of the contacts that you had with any of the defendants in this case during the relevant time from August 22nd, 2017 through say the end of October 2017?
> A. To the best of my recollection.

(Pl. Dep. 118:12-16.) In the first amended complaint, Plaintiff contends that he talked with Castaneda "a day or so" before the October 26, 2017, incident and explained his symptoms and lack of OTC Prilosec. (First Amd. Compl. at pp.3-4; ECF No. 14.) However, Plaintiff's allegations demonstrate

that Castaneda returned to his cell a day or so later and had talked to the trust found administrator and Warden about the issue. (Id. at p. 4.) Plaintiff's allegations demonstrate that Castaneda was willing to investigate the matter and attempted to help Plaintiff with his complaints about acid reflux. Thus, even assuming the validity of Plaintiff's allegations, there is no evidence that Castaneda acted with "deliberate indifference."

        3.        Qualified Immunity

Because the Court has found that the conduct alleged by Plaintiff does not state a constitutional deprivation, the Court need not address Defendants' arguments for qualified immunity.

## IV.

## ORDER AND RECOMMENDATION

Based on the foregoing, the Clerk of the Court is HEREBY ORDERED to correct the spelling of Defendants Alatary and Castaneda names on court docket by substituting "Alatary" for "Alitary" and "Castaneda" for "Castenada".

Further, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment be granted.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 17, 2019**

                                       UNITED STATES MAGISTRATE JUDGE